IN THE CIRCUIT COURT
FOR BALTIMORE COUNTY, MARYLAND

| | |
|---|---|
| CONNECT YOUR CARE, LLC<br>307 International Circle, Suite 200<br>Hunt Valley, Maryland 21030<br><br>    Plaintiff,<br>v.<br><br>CONDUENT HR SERVICES, LLC<br>    (formerly known as<br>    XEROX HR SOLUTIONS, LLC)<br>with listed principal address of<br>100 Campus Drive, Suite 200E<br>Florham Park, New Jersey 07932-1020<br><br>    Defendant. | Case No. _____ |

## COMPLAINT

Plaintiff Connect Your Care, LLC ("CYC" or "Plaintiff"), through counsel, sues the Defendant and for its complaint alleges as follows.

### Introduction

1. This civil action involves unpaid charges owed by the Defendant to Plaintiff.

2. Plaintiff CYC has supplied services to Defendant Conduent HR Services, LLC, which was formerly known as Xerox HR Solutions, LLC ("Defendant" or "Conduent").

3. Despite requests for payment or arrangements for sums owed, Defendant Conduent has failed to pay sums owed. As a result, Plaintiff CYC brings this action for a monetary judgment and for other appropriate relief.

18476068-v1

## The Parties

4. Plaintiff CYC is a Maryland limited liability company with its principal office located at 307 International Circle, Hunt Valley, Maryland.

5. Plaintiff CYC is a leading provider of services for what are referred to as Consumer Directed Healthcare ("CDH") programs and products. CYC has distinguished itself in this industry by being able to deliver quality, easy-to-use platforms, and for its ability to develop customized features and customized programs. As explained on CYC's website:

> ConnectYourCare is one of the largest, and the most responsive, providers of uniquely featured Consumer-Directed Healthcare (CDH) solutions, including; Health Savings Accounts (HSAs), Health Reimbursement Arrangements (HRAs), Flexible Spending Accounts (FSAs), retirement health benefit account administration, COBRA, and transit and commuter programs. The plans we offer are fundamentally different—providing features like flexible funding and financing options, as well as better strategies for driving adoption and guiding usage.
>
> Our approach to consumer directed care is rooted in creating better, more efficient connections among: the people who provide benefits (employers, health plans, and financial institutions), the people accessing healthcare services (employees/members), and the people who deliver healthcare services (doctors, nurses, technicians, and other providers).

*See* https://www.connectyourcare.com/about-us/our-company/ (last visited August 1, 2017):

6. On information and belief, Defendant Conduent: (a) is a Pennsylvania limited liability company that formerly was known as Xerox HR Solutions; LLC; and (b) has a listed principal place of business of 100 Campus Drive, Suite 200, Florham Park, New Jersey 07932-1020. Defendant Conduent is a subsidiary of the publicly traded corporation Conduent Inc.

7. The business division within Conduent that is involved here is sometimes referred to as Benefit Wallet ("BW") and is described by Conduent on its website as follows:

> Our BenefitWallet HSA is the nation's top HSA administrator. Our HSA solution was first brought to market in 2004, when Congress passed the legislation enabling HSAs. Since then, we have grown to be one of the

largest administrators of HSAs in the nation. With The Bank of New York Mellon (BNY Mellon) as our custodian, Xerox [now Conduent] serves 20,000 HSA employer customers and manages more than 1.7 million accounts with an accumulated $2 billion of assets.

\* \* \*

BenefitWallet is a product offered by Conduent Inc., the world's largest provider of diversified business process services with leading capabilities in transaction processing, automation, analytics and constituent experience. We work with both government and commercial customers in assisting them to deliver quality services to the people they serve.

We manage interactions with patients and the insured for a significant portion of the U.S. health care industry. We're the customer interface for large segments of the technology industry. And, we're the operational and processing partner of choice for public transportation systems around the world.

Whether it's digital payments, claims processing, benefit administration, automated tolling, customer care or distributed learning – Conduent manages and modernizes these interactions to create value for both our clients and their constituents.

*See* https://www.mybenefitwallet.com/about-us.html (last visited July 17, 2017).

### Jurisdiction and Venue

8. Jurisdiction and venue are proper in this court. Plaintiff CYC is a Maryland limited liability company with its principal place of business in Maryland. Defendant Conduent conducts business in Maryland and provides CDH-related products and services to Maryland businesses and to the employees of Maryland businesses.

### Facts common to all counts

9. In 2013, Defendant Conduent sought to obtain the use of CYC's technology platform, products, and services and to make those available to benefit the CDH programs offered by Conduent to its customers.

10. Conduent and CYC entered into a Master Services Agreement dated May 30, 2013 (the "MSA").

11.  Under the MSA, CYC made available and provided its technology platform, products, and services to Conduent.

12.  The term of the MSA commenced in May 2013 and ran until December 31, 2016.

13.  The term of the MSA expired on December 31, 2016, and no renewal term occurred.

14.  Under the MSA, Conduent was required to timely pay CYC for the services and/or products that CYC supplied to Conduent.

15.  Conduent has failed to pay for services and/or products supplied by CYC for Conduent under the MSA. By way of example:

   a.  In July 2016, Plaintiff CYC invoiced Conduent for charges related to IT development work then performed in 2016 for Conduent and calculated to be in the amount of $268,365.63. Conduent has failed to pay those charges and failed to make payment arrangements for them.

   b.  In July 2016, Plaintiff CYC invoiced Conduent for charges related to IT development work performed for Conduent for employer portal development and calculated to be in the amount of $61,327.50. Conduent has failed to pay those charges and failed to make arrangements for them.

   c.  In August 2016, in squaring up charges for prior development work, Plaintiff CYC invoiced Conduent for charges related to IT development work performed for Conduent during the 2013 to 2015 time period, and calculated to be in the amount of $1,189,670. Conduent has failed to pay those charges and failed to make arrangements for them.

   d.  In July 2016, Plaintiff CYC also invoiced Conduent for charges related to under-reported HSA accounts and calculated to be in the amount of $431,521.72. Conduent has

failed to pay those charges and failed to make arrangements for them, despite indications – including by Conduent Manager Patrick Donovan in October 2016 – that Conduent supposedly was working to reconcile those accounts and confirm the sums owed by Conduent to CYC for this item:

> **From:** Donovan, Patrick A.
> **Sent:** Monday, October 10, 2016 2:19 PM
> **To:** Michelle Stevens
> **Subject:** RE: Unbilled details
>
> Hi Michelle,
>
> Yes, we have access to the file [*i.e*, the file with certain data related to under-reporting] now. We have initiated a project to attempt a reconciliation for these accounts. There will be development for us to complete this initiative so please understand this will take time for us to complete. I will provide updates as we move forward and let you know if we need any additional information.
>
> Thanks!
>
> Patrick.

   e. Plaintiff CYC also has invoiced Conduent for charges related to issuance of new debit cards for, and at the request of, Conduent. Conduent has not yet paid that invoice and, at times, has suggested that it might not pay the charges associated with the issuance of new debit cards for, and at the request of, Conduent.

16. CYC has requested that Conduent pay sums owed.

17. As of the date of the filing of this complaint and despite such requests, Defendant Conduent has failed to pay sums owed.

18. Plaintiff CYC already has complied with the dispute resolution provision contained in the MSA to the extent that provision may be applicable and has expended substantial efforts in attempting to work with Conduent to resolve issues. In this connection:

(a) in December 2016, to resolve issues and open invoices, CYC invoked and proceeded with the dispute resolution procedures provided for under section 12(q) of the MSA;

(b) to aid possible resolution, and notwithstanding that payment of charges by Conduent is a condition for CYC continuing to provide services after expiration of the MSA (*see, e.g.*, MSA at § 9(c) (CYC continuing to provide services during any transition period after the notice of nonrenewal is "provided that CYC is being paid on a timely basis for all Fees and other amounts due under this Agreement"), CYC has continued to provide services to Conduent after expiration of the MSA, notwithstanding non-payment by Conduent;

(c) with regard to possible transition services, CYC has cooperatively provided multiple work-ups of estimates despite vacillation by Conduent ranging from robust transition services being requested to no transition services being requested;

(d) CYC's good-faith efforts to resolve issues were notwithstanding what it believes are certain contrived and erroneous positions floated by Conduent over time – *e.g.*, (i) notwithstanding the express terms of the MSA, suggesting that transition services supposedly should be provided by CYC for free; (ii) notwithstanding the express terms of § 9(c) of the MSA, the payment of overdue sums owed by Conduent should not be relevant to possible transition services; and (iii) that § 5(e) of the MSA supposedly applied and required transition of data to Conduent for free.

19. As a result of its failures to pay, Defendant Conduent is in breach and CYC has been damaged.

#18476068-v1

20.     Among the damages suffered by CYC are the failure to receive payment of sums owed, the loss of interest upon those sums, and the incurring of costs and expenses associated with trying to obtain payment from Conduent of overdue amounts.

21.     Under the MSA, Defendant Conduent also is responsible for certain costs, fees (including reasonable attorneys' fees) and expenses incurred by CYC in trying to collect overdue amounts.

22.     On June 27, 2017, a 12-month period contemplated under the MSA for possible transition assistance expired. *See* § 9(c) of the MSA (providing that "Upon notice of expiration or termination by either Party to this Agreement" a possible transition assistance period commences and "may involve a twelve (12) month time frame or such period agreed to by the Parties"). Excepting certain arrangements related to a specific customer, the parties did not agree to any alternate time period for possible transition assistance. So, except for one customer, the possible 12-month period for transition assistance (commencing from the June 27, 2016 notice of nonrenewal) expired on June 27, 2017.

23.     Subsequent to June 27, 2017, Conduent has continued to obtain services and products from CYC under the terms then applicable.

24.     Subsequent to June 27, 2017, Conduent owes sums to CYC for the purchase of services and products from CYC.

Count I
(Breach of Contract; Non-payment)

25.     Plaintiff CYC incorporates the allegations contained in paragraphs 1 through 24 above as if those allegations were fully restated here. To the extent necessary or appropriate, this count is alleged in the alternative to any other counts in this complaint.

26. Under the terms of the MSA, Defendant is required to pay to CYC sums owed by Conduent for services or products rendered.

27. Defendant Conduent owes sums to CYC for services or products rendered

28. Despite requests, Defendant Conduent has failed to pay to CYC sums owed.

29. As a result of nonpayment, Defendant Conduent is in breach of contract.

30. The breaches by Defendant Conduent have caused damage to CYC.

31. To adequately compensate CYC, appropriate pre-judgment interest on overdue sums should be awarded to CYC and assessed against Defendant.

32. Appropriate costs, fees (including reasonable attorneys' fees where appropriate) and expenses incurred by CYC in pursuing collection against Defendant Conduent also should be part of the judgment entered against Defendant Conduent.

WHEREFORE, Plaintiff CYC respectfully requests that this Court enter judgment in its favor and against Defendant in an amount that will be determined during the course of these proceedings and which is believed to be in an amount that will exceed One Million Dollars ($1,000,000.00). The judgment should include: (a) appropriate pre-judgment interest and post-judgment interest; (b) an appropriate award of costs, expenses, and fees (including reasonable attorneys' fees) incurred by CYC in obtaining judgment; and (c) such other and further relief as may be established as appropriate during the course of these proceedings.

Count II
(Declaratory Relief)

33. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-24 above as if those allegations were fully set forth here.

#18476068-v1

34. Under the arrangements between the parties, Conduent was required to pay charges based upon the number of HSA accounts for Conduent on the CYC platform that were open and available to be used.

35. Periodically, Conduent publicly reports or states the number of open HSA accounts that it has at a point in time, including to industry consultants like the Devenir Group.

36. Periodically, Conduent has reported a number for its open HSA accounts at a point in time that is materially in excess of the number of HSA accounts coded as open for Conduent on the CYC platform.

37. CYC has questioned why, at points in time, there is a large difference between: (a) the number of open HSA accounts that Conduent is reporting publicly, and (b) the number of the HSA accounts for Conduent on the CYC platform coded as open.

38. A concern exists that, whether through Conduent providing incorrect information for coding of accounts or otherwise, Conduent has not paid the correct amount for the true number of open HSA accounts on the CYC platform and thereby Conduent has materially underpaid.

39. Despite inquiry by CYC, Conduent has not provided a satisfactory response to CYC as to why Conduent has publicly reported a much larger number of open HSA accounts in comparison to the number of HSA accounts coded as open for Conduent on the CYC platform.

40. As a result, there exist questions and an actual controversy between the parties, including regarding the true number of open HSA accounts for Conduent on the CYC platform during relevant time periods and whether Conduent has underpaid as a result of more open HSA accounts existing on the CYC platform than previously calculated.

41. A declaratory judgment that clarifies and determines the parties' respective rights and obligations will help resolve, lessen, and/or otherwise terminate such questions, controversies and any uncertainty between the parties and enable them to guide their future course of conduct.

WHEREFORE, Plaintiff requests that the Court enter a declaratory judgment that includes:

(a) the accurate number of open HSA accounts for Conduent on the CYC platform at relevant times from roughly May 2013 (when the MSA took effect) and coming forward in time;

(b) the reason(s) why, periodically, Conduent has reported a number for its open HSA accounts that is materially in excess of the number of HSA accounts coded as open for Conduent on the CYC platform;

(c) whether, through Conduent providing incorrect information for coding of accounts or otherwise, Conduent has not paid the correct amounts for open HSA accounts on the CYC platform and thereby Conduent has underpaid CYC; and

(d) such other and further relief as may be established as appropriate during the course of this action.

Dated: August 2, 2017

*/s/ John T. Prisbe*

John T. Prisbe
Meredith K. Boram
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 244-7400 – telephone
(410) 244-7742 – facsimile
jtprisbe@venable.com
mkboram@venable.com

Counsel for Plaintiff