IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Connect Your Care, LLC

\*

v.   \*   Civil Action No. CCB-17-2538

Conduent HR Services, LLC   \*

\*
\*\*\*

**Memorandum**

The plaintiff, Connect Your Care, LLC (CYC), agreed by contract to provide the defendant, Conduent HR Services, LLC, consumer healthcare services. CYC now sues Conduent claiming that it breached the terms of that agreement. Conduent has counter-sued asserting claims for breach of contract and negligent misrepresentation.[1] Although the parties are working to resolve the parties' dispute over the contract,[2] CYC has moved to dismiss Conduent's tort counter-claims. For the reasons stated below, the court will grant CYC's motion.

**Background**

CYC and Conduent entered a written agreement in 2013 with an initial term that would end, if one or both parties desired, as early as 2016 but would otherwise be automatically extended for two two-year terms. (Def.'s Counter-Claim, ECF No. 7 at ¶ 22). As part of the agreement, CYC agreed to provide Conduent "recordkeeping services, reimbursement distribution services, debit card services, consumer information tools, customer service, and administrative services" to support Conduent's administration of consumer-directed healthcare. (*Id.* at ¶ 30). CYC also agreed to transfer Conduent's accounts and data off CYC platforms at a

---

[1] Conduent initially included a third counter-claim for tortious interference with prospective advantage, but has since voluntarily withdrawn that claim. (ECF No. 27).
[2] For that reason, Conduent's breach of contract claim is not being challenged here. Thus, left open by the parties' briefing and this memorandum is whether CYC met its transition obligations under the contract.

1

commercially reasonable price upon termination of the agreement. (*Id.* at ¶ 25). Specifically, the parties agreed that:

> Upon notice of expiration or termination by either Party to this Agreement, [the parties] shall mutually, expeditiously, and in good faith proceed to agree upon and document a Transition Assistance plan . . . . [Conduent] shall pay CYC for CYC's commercially reasonable costs, [f]ees and expenses for the Transition Assistance services to be performed by CYC and its Third Party Service Providers.

(*Id.*).

The agreement also was fully integrated. It provided that "[t]his Agreement . . . constitutes the entire agreement between the Parties . . . [and] [e]ach Party hereby acknowledges that it has not entered into this Agreement in reliance upon any representation made by the other Party not set forth in this Agreement." (ECF No. 23 at p. 9).

As the original agreement approached its termination date, CYC sought to negotiate new terms. (ECF No. 7 at ¶ 9). Unable to reach an agreement, however, Conduent decided against renewal, triggering the agreement's transition provisions and setting the contract to lapse in December 2016. (*Id.* at ¶ 10). Conduent soon discovered that CYC had never transitioned data as complicated as its own, that CYC lacked the necessary "infrastructure, coding, personnel, and other resources" to do so, and that it would cost millions of dollars for CYC to create the tools to fulfill its contractual obligations. (*Id.* at ¶ 69). Faced with a transition bill between $2.9 million and $3.7 million, Conduent asked CYC instead for a "data dump," but CYC told Conduent that even a data dump would "require thousands of hours of coding, increased staff, and increased resources" and cost $3.7 million. (*Id.* at ¶ 73).

CYC filed suit against Conduent in September 2017 for breach of contract and declaratory relief. (ECF No. 2). After Conduent answered and filed a counter-claim, (ECF No. 7), CYC filed its motion to dismiss, (ECF No. 23).

**Standard of Review**

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). And the plaintiff typically must do so by relying solely on facts asserted within the four corners of his complaint. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015).

**Analysis**

CYC's motion to dismiss raises two disputes: (1) whether Maryland or Delaware law applies to Conduent's tort claim; and (2) whether under applicable law Conduent has sufficiently stated a claim for negligent misrepresentation. Because under both Maryland and Delaware law Conduent has failed to state a plausible claim that CYC negligently asserted a false statement, CYC's motion to dismiss will be granted.

I.

CYC first argues that because the parties' contract is governed by Delaware law the court also should apply that law to Conduent's counter-claim. Conduent rejects CYC's position, stating instead that because its claim sounds in tort rather than contract under Maryland choice-of-law rules Maryland law should apply. But really this is of no matter, Conduent continues, because Delaware law on negligent misrepresentation is functionally equivalent to Maryland law. Because Conduent accurately describes Maryland and Delaware law the court need not resolve the parties' choice-of-law dispute: Under either law, Conduent's claim will be dismissed. *See World Fuel Services Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507, 514-15 (4th Cir. 2015); *see also Cain v. Midland Funding, LLC*, 156 A.3d 807, 813 n.9 (Md. 2017) (explaining that under Maryland law a court may accept the parties' assumption that Maryland law applies).[3]

II.

Moving to the merits, Conduent claims that during contract negotiations CYC negligently misrepresented its ability to transition Conduent's data off its systems at a reasonable cost when really it had no tools to do so and building those tools would be unreasonably costly. But Conduent fails to show that its relationship with CYC was sufficient to give rise to a duty of care, and even if it was, Conduent also fails to show that it was justified in relying on CYC's pre-contractual representations after expressly disclaiming that it would do so in the contract.

Under Maryland law, a plaintiff alleging negligent misrepresentation must show that: "(1) the defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement; (2) the defendant intend[ed] that his statement [would] be acted upon by the plaintiff; (3) the

---

[3] The analysis below will expressly reference Maryland law, but will include citations to Delaware analogs.

4

defendant ha[d] knowledge that the plaintiff [would] probably rely on the statement, which, if erroneous, [would] cause loss or injury; (4) the plaintiff, justifiably, [took] action in reliance on the statement; and (5) the plaintiff suffer[ed] damage proximately caused by the defendant's negligence." *Gross v. Sussex Inc.*, 630 A.2d 1156, 1162 (Md. 1993).[4] Critically, "unless the maker of the false statement owes a duty of care to the party who relies on it, there can be no recovery for negligent misrepresentation." *Id.* at 1163.

Maryland courts have held that "[f]or claims of economic loss due to negligent misrepresentation" a defendant only owes a duty to a plaintiff if an "intimate nexus" exists between them. *Griesi v. Atlantic General Hosp. Corp.*, 756 A.2d 548, 554 (Md. 2000).[5] Generally, arms length business negotiations do not give rise to an intimate nexus "unless they invoke considerations of personal trust and reliance." *Dierker v. Eagle Nat. Bank*, 888 F. Supp. 2d 645, 655 (D. Md. 2012); *see also Sagent Technology, Inc. v. Micros Systems, Inc.*, 276 F. Supp. 2d 464, 471-72 (D. Md. 2003) (holding the same); *21st Century Properties Co. v. Carpenter Insulation and Coatings Co.*, 694 F. Supp. 148, 154 (D. Md. 1988) (holding the same).[6] This is true even for a "duty assumed or implied in contract:" a contract duty alone does

---

[4] In Delaware a plaintiff must show: "(1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon the false information." *Pennsylvania Employee, Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 485-86 (D. Del. 2010) (applying Delaware law).

[5] Delaware courts apply an even stricter rule: "[W]here an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *McKenna v. Terminex Intern. Co.*, 2006 WL 1229674 at *2 (Del. Super. Ct. Mar. 13, 2006); *see also Brasby v. Morris*, 2007 WL 949485 at *7 (Del. Super. Ct. Mar. 29, 2007) ("There exists no reason to extend tort law into areas that can be adequately governed by contract law. The damages alleged were the foreseeable consequence of the unfulfilled [contract]."); *cf. Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200-01 (Del. 1992) ("[W]e find that the economic loss doctrine," a doctrine that prohibits the recovery under tort law, "is especially suited to cases where privity of contract does exist. Because Conduent's claim is "essentially repeated in" its breach of contract claim the plaintiff fails to assert an independent tort duty under Delaware law.

[6] Conduent cites *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'Ship*, 2012 WL 4341582 (D. Md. Sept. 20, 2012) for the proposition that all contract negotiations give rise to a duty of care. But *J.E. Dunn.* relied on two cases involving special circumstances. 2012 WL 4341582 at *8. The first is *Griesi v. Atlantic General Hosp. Corp.*, 756 A.2d 548 (Md. 2000) where the court held that in the employment context, an employer knows or should know that a potential employee will rely on the employer's statements during negotiations over an employment contract. 756 A.2d at 556.

not become a tort duty "absent a[n] [independent] duty or obligation imposed by law." *Jacques v. First Nat. Bank of Md.*, 515 A.2d 756, 759 (Md. 1986). Ultimately, Maryland courts look "for linking conduct—enough to show the defendant knew or should have known of the plaintiff's reliance." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 457 (Md. 2017).

The complaint makes clear that the parties' business relationship was of the arms length type, unattended by a long-standing business or personal relationship likely to give rise to mutual trust, or any reasonable reliance on the other's statements. Conduent and CYC are first time business partners, unconnected by a personal relationship, or prolonged contract negotiations. The complaint describes a routine business relationship, one in which Conduent and CYC could be certain only that the other was pursuing its own interests. This alone cannot support an intimate nexus.

Further, Conduent promised not to place any reliance on CYC's pre-contractual statements. In the contract, Conduent "acknowledge[d] that it ha[d] not entered into [the] Agreement in reliance upon any representation made by the other Party not set forth in [the] Agreement." Because the complaint does not alleges any intimate nexus between CYC and Conduent, and because CYC did not know or have reason to know about Conduent's alleged reliance, CYC did not owe Conduent a duty of care.

III.

But even if CYC did owe Conduent a duty of care, Conduent's claim would still fail under Rule 8. To start, Conduent's counter-claim fails to identify the particular unlawful

---

The second is *Brock Bridge Ltd. Partnership, Inc. v. Development Facilitators, Inc.*, 689 A.2d 622 (Md. Ct. Spec. App. 1997) in which the court held that a person "knowledgeable in a particular field" knows or should know that a person will rely on its representations on that subject. 689 A.2d at 631-32.

representation made by CYC. Indeed, in different arguments Conduent identifies two different versions of CYC's alleged misrepresentation: CYC either represented that (1) it had the experience and resources to transition Conduent's data *at the time the contract was formed*; or (2) that it merely would have the resources and experience to transition Conduent's data *when required in the future*. And it uses those two proposed representations as the law makes it expedient to do so. Because each fails under Rule 8 for independent reasons, the court need not decide which of the two Conduent truly asserts.

Take Conduent's first theory first. Recall that to satisfy the standard for negligent misrepresentation Conduent must have justifiably relied on CYC's statements. But in the contract Conduent expressly disclaimed reliance on any representations made during pre-contract negotiations. And a plaintiff that does just that cannot "justifiably rely, and in fact d[oes] not have a right to rely, on any alleged misrepresentations not in the [contract]." *See In re Marine Energy Systems Corp.*, 299 Fed. Appx. 222, 230 (4th Cir. 2008) (applying South Carolina law);[7] *see also Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 140 (Del. Ch. 2009) (recognizing that "Delaware permits parties to disclaim reliance on representations outside of [a] written agreement" if the anti-reliance provision is explicit). Conduent thus was not justified in relying on any of CYC's pre-contractual representations.

Conduent makes use of its second version of CYC's misrepresentation in response. It tries to overcome the force of its contractual obligations through careful reading—it argues that it did not disclaim reliance on *all* representations but rather just those not "set forth in th[e] [a]greement." And because CYC's representation regarding the transition *was* set forth in the agreement, Conduent had every right to rely on it. But the first version of CYC's alleged

---

[7] Unpublished cases are cited for the strength of their reasoning and not for any precedential value.

misrepresentation is different from what was set out in the agreement—Conduent contends that CYC represented it had the capability of transitioning Conduent's data at the time the contract was signed (version 1), but the contract only states that CYC promised to transition Conduent's data upon termination of the agreement (version 2). Those are two different representations, and thus to the extent CYC allegedly represented during contract negotiations that it had the current capability to transition Conduent's data Conduent's claim cannot be saved by its reliance on the representation in the contract.

But even if Conduent means to argue that CYC represented that it *would* have the capability to transition its data when needed in the future and therefore was justified in relying on the representation under the contract, the complaint would still be dismissed because it fails to show that CYC knew or should have known its representation was false. Conduent's burden here is more significant than it suggests: it cannot show just that CYC knew it lacked the capability at the time the contract was signed, it must show that CYC knew it would lack the capability two years later. The complaint, thin on the former showing, is utterly silent on the latter. As a result, it fails to plausibly show that CYC knew or should have known its representation was false.

**Conclusion**

For the reasons stated above, Conduent's counter-claim for negligent misrepresentation will be dismissed. A separate order follows.

\_\_\_\_\_7/18/2018_____ _____/s/_____
          Date                                   Catherine C. Blake
                                                United States District Judge